# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4037 |
| WE INFORM, LLC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4041 |
| INFOMATICS, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4045 |
| THE PEOPLE SEARCHERS, LLC, et al., | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION,
et al.,

                Plaintiffs,

v.

DM GROUP, INC., et al.,

                Defendants.

Civil Action No. 1:24-cv-04075

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

                Plaintiffs,

v.

DELUXE CORPORATION, et al.,

                Defendants.

Civil Action No. 1:24-cv-4080

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

                Plaintiffs,

v.

QUANTARIUM ALLIANCE, LLC, et al.,

                Defendants.

Civil Action No. 1:24-cv-4080

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 1:24-cv-4103 |
| v. | |
| YARDI SYSTEMS, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 1:24-cv-4141 |
| v. | |
| DIGITAL SAFETY PRODUCTS, LLC, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| | Civil Action No. 1:24-cv-04143 |
| v. | |
| CIVIL DATA RESEARCH | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION, et al.,

     Plaintiffs,

v.

SCALABLE COMMERCE, LLC, et al.,

     Defendants.

Civil Action No. 1:24-cv-04160

---

ATLAS DATA PRIVACY CORPORATION, et al.,

     Plaintiffs,

v.

LABELS & LISTS, INC.

     Defendants.

Civil Action No. 1:24-cv-4174

---

ATLAS DATA PRIVACY CORPORATION, et al.,

     Plaintiffs,

v.

INNOVIS DATA SOLUTIONS INC., et al.,

     Defendants.

Civil Action No. 1:24-cv-4176

ATLAS DATA PRIVACY CORPORATION,
et al.,

                    Plaintiffs,

v.

ACCURATE APPEND, INC., et al.

                    Defendants.

Civil Action No. 1:24-cv-4178

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

                    Plaintiffs,

v.

ZILLOW, INC., et al.,

                    Defendants.

Civil Action No. 1:24-cv-04256

---

ATLAS DATA PRIVACY CORPORATION,
et al.,

                    Plaintiffs,

v.

EQUIMINE, INC., et al.,

                    Defendants.

Civil Action No. 1:24-cv-04256

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4292 |
| MELISSA DATA CORP., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4324 |
| RESTORATION OF AMERICA, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4345 |
| i360, LLC, et al., | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION, et al.,

                        Plaintiffs,

v.

GOHUNT, LLC, et al.,

                        Defendants.

Civil Action No. 1:24-cv-04380

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                        Plaintiffs,

v.

ACCUZIP, INC., et al.,

                        Defendants.

Civil Action No. 1:24-cv-4383

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                        Plaintiffs,

v.

SYNAPTIX TECHNOLOGY, LLC, et al.,

                        Defendants.

Civil Action No. 1:24-cv-4385

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4389 |
| JOY ROCKWELL ENTERPRISES, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-4434 |
| E-MERGES.COM, INC. | |
| Defendants. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-04609 |
| NUWBER, INC., et al., | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION, et al.,

        Plaintiffs,

v.

ROCKETREACH LLC, et al.,

        Defendants.

Civil Action No. 1:24-cv-4664

---

ATLAS DATA PRIVACY CORPORATION, et al.,

        Plaintiffs,

v.

BELLES CAMP COMMUNICATIONS, INC., et al.,

        Defendants.

Civil Action No. 1:24-cv-04949

---

ATLAS DATA PRIVACY CORPORATION, et al.,

        Plaintiffs,

v.

PROPERTYRADAR, INC., et al.,

        Defendants.

Civil Action No. 1:24-cv-5600

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 1:24-cv-5656 |
| v. | |
| THE ALESCO GROUP, L.L.C. | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 1:24-cv-05658 |
| v. | |
| SEARCHBUG, INC. | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 1:24-cv-05775 |
| v. | |
| AMERILIST, INC., et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | Civil Action No. 1:24-cv-7324 |
| v. | |
| US DATA CORPORATION, et al., | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION, et al.,

                Plaintiffs,

v.

SMARTY, LLC, et al.,

                Defendants.

Civil Action No. 1:24-cv-8075

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                Plaintiffs,

v.

COMPACT INFORMATION SYSTEMS, LLC, et al.,

                Defendants.

Civil Action No. 1:24-cv-8451

---

ATLAS DATA PRIVACY CORPORATION, et al.,

                Plaintiffs,

v.

DARKOWL, LLC, et al.,

                Defendants.

Civil Action No. 1:24-cv-10600

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-04269 |
| THOMSON REUTERS CORPORATION, et al., | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-04096 |
| DELVEPOINT LLC, et al. | |
| Defendants. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-11023 |
| SPY DIALER, INC., et al., | |
| Defendants. | |

ATLAS DATA PRIVACY CORPORATION, et al.,

        Plaintiffs,

v.

PEOPLEWHIZ, INC., et al.,

        Defendants.

Civil Action No. 1:25-cv-00237

---

ATLAS DATA PRIVACY CORPORATION, et al.,

        Plaintiffs,

v.

LIGHTHOUSE LIST COMPANY, LLC., et al.,

        Defendants.

Civil Action No. 1:24-cv-11443

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTON TO DISMISS PURSUANT TO RULE 12(B)(6)

Dated: March 18, 2025

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Petitioners-Defendants
RocketReach LLC (1:24-cv-04664), Deluxe
Corp. (1:24-cv-04080), PropertyRadar Inc.
(1:24-cv-05600), and DM Group Inc. (1:24-
cv-04075)*

# TABLE OF CONTENTS

I.     INTRODUCTION .............................................................................................. 1

II.    RELEVANT FACTS ......................................................................................... 4
       A.     Daniel's Law ............................................................................................ 4
       B.     The Complaints and the Parties ............................................................... 6
       C.     The Atlas Platform and AtlasMail ......................................................... 10
              1.     Atlas's Terms of Service .............................................................. 10
              2.     Atlas Begins Sending Takedown Notices in late December 2023 .......... 13

III.   LEGAL ARGUMENT ..................................................................................... 15
       A.     Legal Standard on Motion to Dismiss under Rule 12(b)(6) ................. 15
       B.     Atlas Does Not Plausibly Allege that Daniel's Law Applies to Its 19,000
              Purported "Assignors." ......................................................................... 17
       C.     The Complaints Fail to Plausibly Allege Several Essential Elements of a
              Claim. ..................................................................................................... 19
              1.     Plaintiffs Fail to Plausibly Plead That the Takedown Notices Were
                     Sent by Authorized Persons. ...................................................... 19
              2.     Plaintiffs' Takedown Notices Were Legally Deficient. ............. 22
              3.     Plaintiffs Fail to Allege Receipt of The Takedown Notices. ...... 25
              4.     Plaintiffs Fail to Plausibly Allege that any Defendant Possessed
                     Protected Information or Disclosed That Information After
                     Receiving a Takedown Request. .................................................. 27
              5.     Plaintiffs Fail to Plead That Any Defendant Acted in a "Negligent"
                     Manner. ....................................................................................... 31
       D.     Plaintiffs Fail to Plausibly Plead Proximate Causation and Damages. ...... 33
              1.     Plaintiffs Fail to Plausibly Plead the Required Element of
                     Proximate Cause. ........................................................................ 34
              2.     Plaintiffs Fail to Plausibly Plead Any of Their Claimed Forms of
                     Damages. ..................................................................................... 36
       E.     The Court Should Strike Plaintiffs' Request for Injunctive Relief ...... 39
              1.     All Plaintiffs Fail to Plausibly Allege a Likelihood of Future Harm
                     Sufficient to Obtain Standing to Seek Injunctive Relief. ........... 40
              2.     Plaintiffs' Demand For Injunctive Relief is Overbroad and Should
                     be Stricken. ................................................................................. 40

IV.    CONCLUSION ................................................................................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aden v. Fortsh*,
   169 N.J. 64 (2001) ....................................................................................34

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................10

*In re Asbestos Products Liab. Litig. (No. VI)*,
   822 F.3d 125 (3d Cir. 2016)....................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................1, 15, 32

*Atlas Data Privacy Corp. v. We Inform*, LLC,
   No. 24-4037, 2024 U.S. Dist. LEXIS 216377 (D.N.J. Nov. 26, 2024) .......................... *passim*

*Bambi Baby.com Corp. v. Madonna Ventures, Inc.*,
   CV 18-12669-WHW-CLW, 2019 U.S. Dist. 92263 (D.N.J. June 3, 2019)..............................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................1, 30

*Boring v. Google Inc.*,
   362 F. App'x 273 (3d Cir. 2010) ...........................................................39

*Borough of Keyport v. Maropakis*,
   332 N.J. Super. 210 (App. Div. 2000) ..............................................22, 23

*Brearey v. Ramsahai*,
   No. 24-CV-01693, 2024 U.S. Dist. LEXIS (E.D. Pa. June 5, 2024)......................................32

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..................................................................10

*Carteret Properties v. Variety Donuts, Inc.*,
   49 N.J. 116 (1967) .......................................................................23, 24, 25

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016)....................................................................16

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975).................................................................................35

*Eddington v. United States Dep't of Def.*,
   35 F.4th 833 (D.C. Cir. 2022) ................................................................26

*Est. of Kamal v. Twp. of Irvington*,
   No. CV158008, 2018 U.S. Dist. LEXIS 192855 (D.N.J. Nov. 9, 2018) ................................36

*Falcone v. Dickstein*,
   92 F.4th 193 (3d Cir. 2024) ................................................................15, 40

*Fleuhr v. City of Cape May*,
   159 N.J. 532 (1999) ................................................................34

*Foulke v. Twp. of Cherry Hill*,
   No. 23-CV-2543, 2024 U.S. Dist. 133168 (D.N.J. July 29, 2024) ................................29

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ................................................................15

*Garrett v. Wexford Health*,
   938 F.3d 69 (3d Cir. 2019) ................................................................16

*GD v. Kenny*,
   205 N.J. 275 (2011) ................................................................33

*Georgia v. Suruda*,
   154 N.J. Super. 439 (Law. Div. 1977) ................................................................34

*In re Gerber Probiotic Sales Practices Litig.*,
   CIV.A. 12-835 JLL, 2013 U.S. Dist. LEXIS 121192 (D.N.J. Aug. 23, 2013) ................................40

*Holtham v. Lucas*,
   460 N.J. Super. 308 (App. Div. 2019) ................................................................37

*Keisling v. Renn*,
   No. 1:09-cv-2181, 2010 U.S. Dist. LEXIS 108523 (M.D. Pa. Oct. 12, 2010) ................................31

*Kennell v. Gates*,
   215 F.3d 825 (8th Cir. 2000) ................................................................26

*Kickflip, Inc. v. Facebook, Inc.*,
   999 F. Supp. 2d 677 (D. Del. 2013) ................................................................8

*Lapensohn v. Hudson City Sav. Bank*,
   No. CV 19-4576-KSM, 2021 U.S. Dist. 77160 (E.D. Pa. Apr. 21, 2021) ................................37

*Leon v. Target Corp.*,
   No. 3:CV-15-01, 2015 U.S. Dist. LEXIS 34490 (M.D. Pa. Mar. 19, 2015) ................................29

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..................................................................................................34

*Lutz v. Portfolio Recovery Assocs.*,
   LLC, 49 F.4th 323 (3d Cir. 2022) ..............................................................15, 16, 22

*Me. Cmty. Health Options v. United States*,
   590 U.S. 296 (2020)..................................................................................................19

*MetLife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*,
   159 N.J. 484 (1999) ..................................................................................................37

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
   No. CV 22-4674, 2023 U.S. Dist. LEXIS 182921 (E.D. Pa. Oct. 10, 2023)..........36

*In re PDI Sec. Litig.*,
   No. 02-0211, 2005 U.S. Dist. 18145 (D.N.J. Aug. 17, 2005)..................................21

*Pichler v. Unite*,
   542 F.3d 380 (3d Cir. 2008)......................................................................................38

*Pride Const. v. Farry*,
   175 N.J. 60 (2002) ....................................................................................................22

*Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*,
   No. 16-01649, 2017 U.S. Dist. LEXIS 26671 (D.N.J. Feb. 27, 2017) ...................17

*Rapaport v. Robin S. Weingast & Assocs.*,
   859 F. Supp. 2d 706 (D.N.J. 2012) ..........................................................................21

*Romaine v. Kallinger*,
   109 N.J. 282 (1988) ..................................................................................................33

*Sixth Angel Shepherd Rescue, Inc. v. West*,
   477 F. App'x 903 (3d Cir. 2012) ..............................................................................40

*Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*,
   358 F. Supp. 3d 389 (D.N.J. 2018) ..........................................................................16

*United States v. Dawson*,
   32 F.4th 254 (3d Cir. 2022) ......................................................................................27

*Utica Mut. Ins. Co. v. DiDonato*,
   187 N.J. Super. 30 (App. Div. 1982) ........................................................................38

*Vibe Micro, Inc. v. Shabanets*,
   878 F.3d 1291 (11th Cir. 2018) ................................................................................29

*Wasserman's Inc. v. Twp. of Middletown*,
   137 N.J. 238 (1994) ................................................................................37

*White v. Barbe*,
   767 F. App'x 332 (3d Cir. 2019) ...........................................................15

**Statutes and Rules**

*N.J.S.A.* §56:8-166.1 ...............................................4, 5, 6, 18, 19, 21, 34, 36, 38, 39

Fed. R. Civ. P. 8 ..........................................................................1, 15, 29, 33

Rule 12(b)(6)..............................................................................10, 15, 31

I.    **INTRODUCTION**

The thirty-nine materially identical Complaints that are the subject of this motion each contain a single count claiming, in conclusory fashion, that Defendants of assorted sizes and operating in different industries all violated Daniel's Law. Aside from the legal conclusion that each Defendant violated Daniel's Law, the Complaints fail to offer plausible allegations sufficient to satisfy Fed. R. Civ. P. Rule 8(a)'s pleading requirements, as articulated by the U.S. Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Accordingly, for the reasons set forth below, the Complaints fail in whole, or in part, and should be dismissed.

Daniel's Law applies only to a narrow category of individuals, narrow categories of data, and in a narrow category of circumstances. Individuals must meet certain statutory thresholds to even invoke the law and must then satisfy numerous discrete statutory elements to state a claim for a violation.  In disregard of the Rule 8 pleading requirements, and in a transparent attempt to try and profit from a well-intentioned law, the dozens of Complaints are boilerplate pleadings that do not state a viable claim for relief.

As a preliminary matter, all of Atlas Data Privacy Corporation's ("Atlas") claims are subject to dismissal because the Complaints contain no information about the identities of the individuals who purportedly "assigned" their claims to Atlas, let

1

alone allegations sufficient to plausibly demonstrate how those unidentified assignors qualify as a "covered persons" under Daniel's Law. In fact, the scant allegations that Atlas makes as to the assignors' "covered person" status is a legal conclusion that does not even track Daniel's Law's narrow definition of that term.

Beyond that, there are additional pleading deficiencies that warrant dismissal of the Complaints. First, there are no plausible allegations that an authorized person "provided" a written takedown notice to a Defendant, as required by Daniel's Law. Instead, the Daniel's Law platform Service Terms that are referenced in the Complaints, confirm that any alleged takedown notices were provided by Atlas. In addition, even if a takedown notice was provided by an authorized person, the skeletal notice referenced in the Complaints lacks sufficient information, as opposed to legal conclusions, to allow the recipient of the notice to confirm the obligations and rights to act in response to the notice.

Second, Daniel's Law requires an entity to actually "receive" a written takedown notice in order to obligate a Defendant to suppress a covered person's home address and/or unpublished phone number. Yet, there is no allegation that any Defendant received the email notices that were sent *en masse* by Atlas to unverified email addresses for the thousands of unidentified "assignors" of claims who Atlas now purports to represent.

2

Third, Daniel's Law provides the recipient of a written takedown notice with ten business days to comply with the request. The Complaints do not set forth any plausible facts about when that ten-business-day period began or when it expired as to any of the individual Plaintiffs or the thousands of Atlas "assignors." The Complaints also provide no facts – as opposed to legal conclusions – about any Defendant's alleged non-compliance with the notices.

Fourth, Daniel's Law requires a recipient of the takedown notice actually possess the information that is the subject of the request in order to "cease" the future "disclosure" of that information. Yet, Plaintiffs set forth no factual allegations about: (1) what information (if any) any Defendant allegedly possessed about the individual Plaintiffs or the thousands of alleged assignors before any takedown notice was sent; or (2) what information any Defendant subsequently "disclosed" about them following the expiration of the ten-business-day statutory compliance period.

Fifth, the Complaints should be dismissed because they fail to allege _any_ facts supporting the claim that any Defendant acted "negligently" under the (highly-suspect) circumstances in which the takedown notices were allegedly provided – a level of culpability this Court has held is necessary for the statute to be constitutional.

Sixth, Plaintiffs fail to plausibly allege they suffered any form of damages permitted under Daniel's Law or that any of their claimed damages were proximately caused by any alleged violation of Daniel's Law by any specific Defendant.

Finally, Plaintiffs' claims for injunctive relief should be stricken because: (1) there are no plausible factual allegations about Defendants' intent to violate Daniel's Law in the future; and (2) the injunctive relief being sought is nothing more than an improper request for entry of an "obey-the-law" order.

## II.     RELEVANT FACTS

### A.     Daniel's Law

These cases all involve the civil provisions of Daniel's Law, which are found in *N.J.S.A.* §56:8-166.1. Daniel's Law was enacted to allow certain government officials to limit disclosure of their "unpublished" home phone numbers and "home" addresses (the "Protected Information"). Compl. ¶ 9.[1]

Daniel's Law does not apply to every government official, but rather only to those who qualify as a "covered person," which is defined in the statute as "[a]n active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator . . . or prosecutor, and any immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator . . . or prosecutor." *N.J.S.A.* §56:8-166.1(d).

Under Daniel's Law, only "an authorized person" can "seek[] to prohibit the disclosure of the home address or unpublished home telephone number of any

---

[1] The citations to allegations, unless otherwise noted, are to the Complaint filed in *Atlas Data Privacy Corp., et al. v. DM Group Inc., et al.*, No. 24-cv 04075-HB, Dkt. No. 1 (the "Compl."). All Complaints are substantively similar.

covered person." *N.J.S.A.* §56:8-166.1(a)(2) (an "authorized person . . . *shall provide written notice* to the person from whom the authorized person is seeking nondisclosure") (emphasis added). An "authorized person" is either a covered person or an individual expressly authorized under Daniel's Law to act on a covered person's behalf. *See N.J.S.A.* §56:8-166.1(d).[2] An alleged "assignee" such as Atlas is not an enumerated "authorized person." *Id.*

Daniel's Law requires that the recipient of the notice "not disclose or re-disclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person." *N.J.S.A.* §56:8-166.1(a)(1). Daniel's Law defines "disclose" to mean "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." *N.J.S.A.* §56:8-166.1(d).

Although Daniel's Law is silent on how a written takedown notice must be transmitted, the law makes clear that the written notice must be *received* by the party from whom nondisclosure is sought. *N.J.S.A.* §56:8-166.1(a)(1) (emphasis added).

---

[2] An "authorized person" is a "covered person," or someone expressly identified in *N.J.S.A.* §56:8-166.1(d)(1), (2), or (3), who is acting on behalf of a covered person. *N.J.S.A.* §56:8-166.1(d).

Indeed, under *N.J.S.A.* §56:8-166.1(a)(1), the compliance period only begins to run "10 business days following *receipt*" of a written notice (or the "takedown notice" as the term is used in the Complaints). *Id.* (emphasis added).

If the recipient of a written notice fails to comply with the statute, then Daniel's Law allows a covered person or the covered person's "assignee"[3] to pursue a civil action and provides that a "court shall award" "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act," "punitive damages," "reasonable attorney's fees and other litigation costs," and "any other preliminary or equitable relief as the court determines to be appropriate." *N.J.S.A.* §56:8-166.1(b) and (c).[4]

### B.    The Complaints and the Parties

Plaintiffs began filing the thirty-nine Complaints that are the subject of this Consolidated Motion to Dismiss on February 6, 2024. Plaintiffs include Atlas, as

---

[3] "Assignee" is defined in Daniel's Law as "a person or entity to whom or which an authorized person has assigned, in writing, a Covered Person's right to bring a civil action for a violation of subsection a. of this section." *N.J.S.A.* §56:8-166.1(d).

[4] The mandatory damages provision and the assignment of claims provision were not part of the original Daniel's Law statute enacted in July 2020. They were added in August 2023, *see* 2023 NJ Sess. Law Serv. Ch. 113 (West), shortly before Atlas inundated scores of companies with nondisclosure emails allegedly on behalf of approximately 19,000 unidentified assignors. Atlas's counsel touts their participation in helping to secure those 2023 amendments. *See* https://www.bsfllp.com/people/mark-mao.html.

6

purported assignee of the claims of thousands of alleged covered persons, and a combination of individual plaintiffs who are alleged to be law enforcement officers (the "Individual Plaintiffs").

Atlas, which is party to every Complaint, is a Delaware corporation that allegedly provides "an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons." Compl. ¶¶ 19, 25. Atlas is not itself a covered person, but instead is alleged to be the "assignee" of claims belonging to approximately 19,000[5] unidentified "covered persons," including "a significant number of individuals who are family members of judges, law enforcement officers and prosecutors." *Id.* ¶ 20.

The Individual Plaintiffs vary from Complaint to Complaint but include some combination of the following: (1) Patrick Colligan, the former president of the New Jersey State Policeman's Benevolent Association ("NJSPBA"); (2) Peter Andreyev, the former vice president and current president of the NJSPBA; (3) William Sullivan; (4) Scott Maloney; (5) Justyna Maloney; and (6) Edwin Maloney.[6] The

---

[5] There are some Complaints where the alleged number of assignors are less than 19,000. *See, e.g.*, *Atlas Data Privacy Corporation, et al. v. Zillow, Inc., et al.*, No. 24-cv-04256-HB, Dkt. No. 1-1 ("Zillow Compl.") ¶ 26 (alleging the assignment of 14,476 claims).

[6] *See, e.g.*, *Atlas Data Privacy Corporation, et al. v. Deluxe Corporation, et al.*, No. 24-cv-04080-HB, Dkt. No. 1-1 ("Deluxe Compl.") ¶¶ 17–24 (naming Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan); *Atlas Data Privacy Corporation, et al. v. RocketReach LLC, et*

Complaints also identify a "Jane Doe-1" and "Jane Doe-2," who are alleged to be law enforcement officers, too. Compl. ¶¶ 15, 16.

The Complaints target businesses of vastly different sizes in a wide variety of industries. *See Atlas Data Privacy Corp. v. We Inform*, LLC, No. 24-4037, 2024 U.S. Dist. LEXIS 216377, at *1 (D.N.J. Nov. 26, 2024) ("The defendants include real estate businesses, direct-mailing and marketing companies, data brokers, and other entities that provide fundraising support to charities and other non-profits."). The Defendants include: sole proprietorships; private companies and public companies that businesses that provide real estate services;[7] business-to-business

---

*al.*, No. 24-cv-04664-HB, Dkt. No. 1-1 ("RocketReach Compl.") ¶¶ 17–18 (naming Edwin Maldonado and Peter Andreyev); *Atlas Data Privacy Corporation, et al. v. PropertyRadar, Inc., et al.*, No. 24-cv-05600-HB, Dkt. No. 1-1 ("PropertyRadar Compl.") ¶¶ 17–23 (naming Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and Peter Andreyev).

[7] *See, e.g.*, https://www.zillow.com/ (providing a platform that helps consumers buy, sell, rent, or finance a home), cited in Zillow Compl. ¶ 39, *Atlas Data Privacy Corp. v. Zillow, Inc.*, No. 24-cv-04256-HB. Courts may consider the websites referenced in this and the footnotes below, as they are explicitly relied upon in the Complaints. *See Edelman v. Croonquist*, CIVA 09-1938 (MLC), 2010 U.S. Dist. LEXIS 43399, at *3, n.1 (D.N.J. May 4, 2010) (taking judicial notice of website "discussed" in the complaint that "provides context" for the conduct at issue) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.")); *Bambi Baby.com Corp. v. Madonna Ventures, Inc.*, CV 18-12669-WHW-CLW, 2019 U.S. Dist. 92263, at *29, n.5 (D.N.J. June 3, 2019) (taking judicial notice of certain website content "integral" to the complaint.); *Kickflip, Inc. v. Facebook, Inc.*,

direct-mailing and marketing companies;[8] credit reporting agencies regulated under the Fair Credit Reporting Act;[9] companies that provide threat intelligence services;[10] companies that provide background information to law enforcement officials, the judiciary, law firms, and financial institutions;[11] companies that provide address autocomplete functions using data from the United States Postal Service;[12] and companies that provide voter information to political campaigns, government offices, news media outlets, and universities.[13]

---

999 F. Supp. 2d 677, 682 (D. Del. 2013) (considering website pages that were "directly cited in the Complaint by their internet addresses").

[8] *See, e.g.*, https://www.dmgroup.com/ ("[W]e offer a full range of services to help our clients achieve their marketing goals."), *cited in* Compl. ¶ 33, *Atlas Data Privacy Corp. v. DM Group Inc.*, No. 24-cv 04075-HB, Dkt. No. 1-1.

[9] *See, e.g.,* https://innovis.com/ (providing credit reporting services), *cited in* Compl. ¶39, *Atlas Data Privacy Corp. v. Innovis Data Solutions Inc.*, No. 24-cv-04176-HB (D.N.J.), Dkt. No.1-1 ("Innovis Compl.").

[10] *See, e.g.*, https://www.darkowl.com/, cited in Compl. ¶37, *Atlas Data Privacy Corp. v. Dark Owl, LLC*, No. 24-cv-10600-HB (D.N.J.), Dkt. No. 1-1.

[11] *See, e.g.*, https://legal.thomsonreuters.com/en/products/clear, *cited in* Compl. ¶42, *Atlas Data Privacy Corp. v. Thomson Reuters Corp.*, No. 24-cv-04269 (D.N.J.), Dkt No. 1-2.

[12] *See e.g.,* https://www.smarty.com, *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. Smarty, LLC*, No. 24-cv-08075 (D.N.J.), Dkt No. 1-2.

[13] *See e.g.*, https://www.emerges.com/ (providing "registered voter lists to political campaigns, pollsters, committees, universities, and researchers"), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. E-Merges.com Inc.*, No. 24-cv-04434-HB (D.N.J), Dkt. No. 1-1.

## C.    The Atlas Platform and AtlasMail

Each Complaint describes Atlas's online platform and the services that Atlas allegedly provides, including "an email service named AtlasMail, [which is provided] to law enforcement officers, prosecutors, judges, and other covered persons." Compl. ¶ 25. Each Complaint also describes how a user allegedly registers for Atlas's services, and contains screenshots from the Atlas online platform, and explains how the platform works. *Id.* ¶¶ 25–29, 48.

### 1.    Atlas's Terms of Service

To access Atlas's online platform, a user must accept Atlas's Daniel's Law Service Terms (the "Service Terms").[14] *See* Declaration of Angelo A. Stio III dated March 18, 2025 ("Stio Decl."), Ex. A (ATLAS-ALL-00000001); *see We Inform, LLC*, 2024 U.S. Dist. LEXIS 216377, at *25.

---

[14]    "In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Asbestos Products Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *id.* (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291 (D.N.J. 2009). Therefore, this Court is permitted to consider Atlas's Service Terms and other documents in ruling on this Motion because they are identified in Plaintiffs' Complaints and are integral to Plaintiffs' claims. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

According to the Service Terms, Atlas provides users with "access to our Atlas privacy platform, email services, and other functionality we make available in support of your rights under Daniel's Law or, if applicable, under other laws and regulations as may be applicable based on your Account subscription." Stio Decl., Ex. A (ATLAS-ALL_00000001). The Service Terms, however, make clear that even Atlas does not verify a user's status as a "covered person." *See id.*, (ATLAS-ALL_00000004)("Atlas' approval of your account ***should not be relied on as confirmation that you have met the eligibility criteria for protection under the Act***.") (emphasis added).

The Service Terms state that "the Atlas platform will schedule the delivery dates of your takedown notices based on a variety of factors" and that Atlas determines "the desirability of batching notices for administrative purposes or to realize efficiencies in notification and delivery." Stio Decl., Ex. A (ATLAS-ALL_00000005). Atlas's online platform also defaults to allow Atlas to schedule delivery of the notices, but a user can affirmatively elect to send notices at a time of the user's own choosing. *Id.* ("[T]he Atlas Platform will also let you send individual takedown notices on an immediate basis to any third party."). An automated takedown notice is referenced in every Complaint. *See, e.g.,* Compl. ¶¶ 45–46 (image of a takedown notice sent on behalf of Plaintiff Andreyev); Innovis Compl. ¶ 52 (image of takedown notice sent on behalf of Plaintiff Sullivan). Despite all this,

the Service Terms provide that "[w]ith respect to your takedown notices, you, and not Atlas, are the sender."

The takedown notice in the Complaints is in the form of an email allegedly directed to a general email box for a defendant. *Id.* ¶ 46. The notices contain no verifying information about the purported covered person, instead stating legal conclusions:

### Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **To** | support@directmail.com |
| **From** | Peter Andreyev <████████@atlasmail.com> |
| **Date** | Sun, Jan 7, 2024 6:33 PM UTC-0500 |

DM Group
January 7, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ███████████████████

Sincerely,
Peter Andreyev

*Id.* (redaction in original).

Atlas's Service Terms acknowledge that "some recipients of takedown notices may not possess some or all of the information in your notice prior to receipt of your takedown notice." Stio Decl., Ex. A (ATLAS-ALL_00000005). The Service Terms also note that "Atlas cannot guarantee, and does not represent, that such parties will

12

accept takedown notices delivered to such email addresses *or that the email addresses selected by Atlas are correct*." *Id.* (emphasis added).

The Service Terms also explain how Atlas allegedly obtained the mass assignment of claims from covered persons. The Service Terms authorize Atlas to send each covered person a written notice "which shall both trigger and confirm [the account holder's] legal assignment to Atlas or an affiliate of Atlas . . . [of the covered person's] right to bring civil enforcement actions for violation of [the covered person's] rights under the Act in connection with one or more of your opt-out requests. . . ." Stio Decl., Ex. A (ATLAS-ALL_00000006). The Service Terms further state that, upon receipt of an Assignment Confirmation, the covered person is deemed "to have irrevocably assigned to [Atlas] all of your rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of your rights under the Act with respect to the opt-out requests covered by the Assignment Confirmation." *Id.*

### 2. Atlas Begins Sending Takedown Notices in late December 2023

Over a roughly two-week span in late December 2023 and in early January 2024, often starting just before Christmas and ending shortly after New Year's Day, Atlas sent many tens of thousands of purported takedown notices using AtlasMail. i.e., emails sent from the "@atlasmail.com" domain. *See, e.g.,* RocketReach Compl. ¶¶ 45 46 (alleging takedown notices were sent "[s]tarting on or about December 22,

2023"); Property Radar Compl. ¶ 51 (alleging takedown notices were sent "[s]tarting on or about December 28, 2023"); *Atlas Data Privacy Corp. v. Melissa Data Corp.*, 1:24-cv-04292-HB (D.N.J.) Compl. ¶ 50 (takedown notices allegedly sent starting on December 21, 2023); Zillow Compl. ¶ 52 (alleging takedown notices were sent "[s]tarting on or about December 31, 2023"); Deluxe Compl. ¶ 51 (alleging takedown notices were sent "[s]tarting on or about January 4, 2024"). The Complaints do not allege the specific dates that the takedown notices were sent to any specific Defendant. *See id.*

The Complaints are boilerplate and substantively identical across the dozens of Defendants. Thus, they all reflect the same omissions:

1. The Complaints do not allege that any Defendant received the takedown notices or how many were in fact received.

2. The Complaints do not allege when the statutory period for compliance began to run or when it expired as to the Individual Plaintiffs or the assignors.

3. The Complaints do not allege what Protected Information a Defendant possessed before a takedown notice was sent or the Protected Information a Defendant allegedly possessed and disclosed or made available after the unidentified statutory compliance period expired.

4. The Complaints fail to allege that any Defendants acted negligently under the circumstances in which the purported notices of nondisclosure were sent.

5. The Complaints contain no plausible allegations to identify the assignors other than a conclusory assertion that the assignors are all covered persons under Daniel's Law.

14

6. The Complaints fail to allege actual damages to support a claim for liquidated damages.

7. The Complaints provide no factual bases supporting the claim for "injunctive" relief.

## III.  LEGAL ARGUMENT

### A.  Legal Standard on Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of the claim's "necessary elements." *Lutz v. Portfolio Recovery Assocs.*, LLC, 49 F.4th 323, 328 (3d Cir. 2022). Although a court must accept as true "well pled factual allegations" and "draw all reasonable inferences" in the plaintiff's favor, *Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024), it must disregard "bare recitation of the claim's legal elements" and "conclusory" or "bare-bones allegations." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To comply with Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted); *see also White v. Barbe*, 767 F. App'x 332, 335 (3d Cir. 2019) ("[V]ague allegations

15

of wrongdoing with no factual elaboration [are] insufficient to state a claim."). Rather, the pleading must "identif[y] discrete defendants and the actions taken by these defendants" with respect to the plaintiff's claims. *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019).

District courts apply a "three-step process" to evaluate whether a Complaint states a claim upon which relief can be granted. *Lutz*, 49 F.4th at 327 (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)). First, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787; *see Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*, 358 F. Supp. 3d 389, 393 (D.N.J. 2018). Second, the court "reviews the complaint and disregards any 'formulaic recitation of the elements of a . . . claim' or other legal conclusion,' . . . as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Lutz*, 49 F.4th at 327 (quoting *Connelly*, 809 F.3d at 790). Third, the court "evaluates the plausibility of the remaining allegations." *Lutz*, 49 F.4th at 327 (citing *Connelly*, 809 F.3d at 787, 790).

Because the Complaints contain only legal conclusions and threadbare and speculative allegations that fall far short of plausibly alleging a violation of Daniel's Law, they should be dismissed.

### B. Atlas Does Not Plausibly Allege that Daniel's Law Applies to Its 19,000 Purported "Assignors."

As a threshold matter, the Court should dismiss all of the claims Atlas seeks to assert on behalf of approximately 19,000 unidentified "assignors," because the Complaints are completely devoid of factual detail about those individuals, including any that substantiates their status as "covered persons."

The Complaints contain no details whatsoever about the identities of the 19,000 "assignors." The *most* expansive factual allegation about them is that the assignors are "approximately 19,532 individuals who are all 'covered persons' under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors." Compl. ¶ 20. Nowhere do the Complaints allege how any assignor qualifies for covered person status or even what information the assignor requested not to have disclosed. This is plainly insufficient. *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-01649, 2017 U.S. Dist. LEXIS 26671, at *11-12 (D.N.J. Feb. 27, 2017) (dismissing claims where the purported "assignee" plaintiff did not "plausibly plead underlying facts demonstrating a valid assignment of benefits," including because the provider failed to "set forth the actual language from the assignments in its complaint"; failed to "include a copy of the alleged assignments"; and failed to "paraphrase the important language from the assignments.").

17

Equally damaging to Atlas's purported status as "assignee" is the allegation that a "significant number" of those 19,000 "assignors" "are family members of judges, law enforcement officers, and prosecutors." Compl. ¶ 20. But not all "family members" are covered persons under the law. Instead, Daniel's Law only applies to an "immediate family member"[15] who "*resides in the same household* as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor." *Id.* Here, Plaintiffs set forth no facts about: (1) whether any purported assignor is an "immediate" family member of a judge, law enforcement officer or prosecutor; or (2) whether any such individual "resides in the same household as a judge, law enforcement officer or prosecutor." Accordingly, while it is evident on the face of the Complaint that a "significant number" of Atlas's purported assignees are not covered persons as a matter of law, it is impossible to tell how many must be excluded.

Because there are no well-pleaded factual allegations that Daniel's Law applies to any "assignor," Atlas's attempt to assert Daniel's Law claims on behalf of unidentified individuals is not plausible and should be dismissed.

---

[15] An "immediate family member" for purposes of Daniel's Law also must be "a spouse, child, or parent of, or any other family member related by blood or by law to, an active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and Permanency, as those terms are defined by section 1 of P.L.1995, c.23 (C.47:1A-1.1), or prosecutor… ." *N.J.S.A.* §56:8-166.1(d).

### C.    The Complaints Fail to Plausibly Allege Several Essential Elements of a Claim.

With respect to both Atlas and the Individual Plaintiffs, a basic comparison of the statutory elements of Daniel's Law to the sparse and formulaic pleadings here demonstrates that the Complaints plead no plausible violations of Daniel's Law. That is true across numerous statutory elements.

#### 1.    Plaintiffs Fail to Plausibly Plead That the Takedown Notices Were Sent by Authorized Persons.

Daniel's Law requires that a written takedown notice must be "provided" by an "authorized person," and that notice must "see[k] to prohibit the disclosure of the home address or unpublished home phone number of any covered person." *N.J.S.A.* §56:8-166.1(a)(2). Under Daniel's Law, that "authorized person" must be either a "covered person" or satisfy certain narrow exceptions not alleged to be implicated here (*e.g.*, requests sent on behalf of medically "incapacitated" covered persons). *Id.* Use of the word "shall" in the statute means that provision of the notice by an authorized person is mandatory. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (interpreting the word "shall" as mandatory).

The Complaints, however, fail to plausibly allege facts sufficient to show that the Individual Plaintiffs and the thousands of purported "covered person" assignors "provided notice" to Defendants as required under Daniel's Law. *See N.J.S.A.* §56:8-166.1(a)(2). While the Complaints contain general, conclusory, and unsupported

allegations that "each of the Individual Plaintiffs and all of the assignors sent Defendants written non-disclosure requests . . . using AtlasMail," Compl. ¶ 51, that is a fiction, is belied by the detailed language in the Service Terms, which conclusively establish that <u>Atlas</u> – and not the Individual Plaintiffs or the assignors – "provided" the alleged notices to the Defendants.

Indeed, the Service Terms reveal the following: <u>Atlas</u> creates the template for the takedown notices and determines what it says, Stio Decl., Ex. A (ATLAS-ALL_00000004); <u>Atlas</u> identifies the "email addresses" of the parties who will be sent the notices, *id*.; and, <u>Atlas</u> "uses its judgment in selecting the appropriate addresses for [users'] takedown notices," *id*.

Moreover, Atlas—not the assignors using AtlasMail—decided when the notices are provided to an entity:

> **The Atlas platform will schedule the delivery dates of your takedown notices,** based on a variety of factors, including, completion of pending updates, testing or maintenance of the Atlas platform, the need to confirm additional information about you or the recipients of your takedown notices, the desirability of batching notices for administrative purposes or to realize efficiencies in notification and delivery.

*Id.* (ATLAS-ALL_00000005) (emphasis added). Further, Atlas unilaterally provides takedown notices "[i]f a third party changes their email address, or in instances of failed delivery or if <u>Atlas</u> identifies a more suitable email address or

20

other method of delivering notice to a party, then *Atlas* may deliver or redeliver your takedown notice to such other address or by such other method." *Id.*

The Complaint's conclusory allegation that the users of the Atlas Platform "sent" the takedown notices "using AtlasMail," (Compl. ¶51) does not change anything, because it is contradicted by the detailed Service Terms which, as discussed, confirm takedown notices are provided by Atlas. When a general allegation in a Complaint conflicts with the terms of a document integral to the Complaint, the language of the document controls. *See, e.g. In re PDI Sec. Litig.*, No. 02-0211, 2005 U.S. Dist. 18145, *66 (D.N.J. Aug. 17, 2005) ("When allegations contained in a complaint are contradicted by the document it cites, the document controls."); *Rapaport v. Robin S. Weingast & Assocs.,* 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (same). So too here, where the Service Terms make plain that Atlas controls the process of providing and sending takedown notices from start to finish.

Because Daniel's Law permits only an "authorized person" to "provide" the takedown notices, the notices that Atlas creates, batches, schedules to send, sends and even potentially resends are invalid as a matter of law. *See N.J.S.A.* §56:8-166.1(a)(2).[16]

---

[16] Even if the Service Terms do not establish that Atlas (rather than the assignors) provided written notice to Defendants, Plaintiffs have not pled facts sufficient to support a reasonable inference that the assignors themselves provided written notice to Defendants. The conclusory assertion that the assignors "sent" Defendants takedown requests "using AtlasMail," Compl. ¶ 51, is insufficient to

## 2. Plaintiffs' Takedown Notices Were Legally Deficient.

As Plaintiffs have conceded, any takedown notice under Daniel's Law must provide enough information to ensure a defendant has "knowledge of 'sufficient facts' to reasonably determine that disclosure 'was prohibited.'" *Atlas Data Privacy Corp., et al. v. Lightbox Parent, L.P.*, No. 24-cv-04105, Dkt. No. 67 at 6 (quoting *Nix v. O'Malley*, 160 F.3d 343, 349 (6th Cir. 1998)). That conclusion is mandated by New Jersey law, as the New Jersey Supreme Court has instructed that notices required under state law must "apprise a party of some fact that he or she has a right to know and that the communicating party has a duty to communicate." *Am.'s Pride Const. v. Farry*, 175 N.J. 60, 63 (2002).

At a minimum, therefore, a notification must "give the necessary information" and "apprise the [party] whose rights are to be affected of what is required of it." *Borough of Keyport v. Maropakis*, 332 N.J. Super. 210, 222 (App. Div. 2000) (quoting *Portage Shoe Mfg. Co. v. Reich*, 53 N.J. Super. 600, 605 (App. Div. 1959)). Vague and conclusory statements do not suffice. *See id.* ("[A] notice must be clear,

---

state a claim. *See Lutz*, 49 F.4th at 327-28 (The court must "disregard . . . allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and the factual.").

definite, and explicit, and not ambiguous.") (citation omitted).[17] Likewise, bare legal conclusions are not sufficient to provide valid notice.

*Carteret Properties v. Variety Donuts, Inc.*, 49 N.J. 116 (1967), demonstrates the invalidity of the takedown notices here. The Court in *Carteret Properties* considered whether a notice required by statute to terminate a tenancy was sufficient. Though the statute required the notice to "specify the cause of the termination," the landlord's notice "simply sa[id] the tenancy is terminated 'for the reason that you have committed a breach of the covenant in your lease providing that the store premises aforesaid are 'to be used and occupied only for the retail sale of food and allied products.'" *Id.* at 124. New Jersey's highest court explained that this generic

---

[17] In addition to being required by the law's text, meaningful notification is also required from a constitutional perspective. *See generally Maropakis*, 332 N.J. Super. at 161–62 (construing statute requiring notice of hearing to include notification of the consequences of failing to attend the hearing in light of constitutional due process concerns). Without it, the law would vastly "over-regulate protected speech." *See Atlas Data Privacy Corporation, et al. v. Lightbox Parent, L.P., et al.*, Civ. Action No. 1:24-cv-4105, Dkt. No. 48 ("AG Br.") at 38 (quoting *Mainstream Marketing Services v. FTC*, 358 F.3d 1228, 1242 (10th Cir. 2004)). The Attorney General has explained that the notification requirement ensures that Daniel's Law "implicates the First Amendment rights of the restricted party to a far lesser extent" than a "blanket restraint" on disseminating information. *Id.* at 27 (quoting *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 950 (7th Cir. 2015)). Yet, accepting Atlas's barebones email as an adequate "notification" would render the law's notification requirement meaningless. Any email parroting the statute's text would cause a recipient to refrain from publishing the information in the email, regardless of whether the person named is "covered" or "authorized" or whether the information is truly "protected."

23

notice was "fatally deficient" because it "contain[ed] no particularization" and "no explicit or detailed statement as to the action or conduct of defendant which allegedly constituted such a violation." *Id.* at 124–25. Instead, the notice stated only a "legal conclusion" that mirrored the language of the lease. *Id.* at 124.

Based on those standards, the exemplar email cited by Plaintiffs does not constitute legally valid notice. Like the statutorily required notice in *Carteret Properties*, the Andreyev notice merely parrots the statutory requirements of Daniel's Law and is woefully deficient. *Id.* It fails to provide notice that Andreyev was an "authorized person," instead merely stating the legal conclusion that Andreyev is "a 'Covered Person' as defined" by Daniel's Law. Compl. ¶ 45. The Andreyev takedown notice does not explain how Andreyev qualifies as a covered person, *i.e.,* whether he is a judicial officer, law enforcement officer, child protective investigator, prosecutor, or even an immediate family member residing in the same household as one of those individuals. Further, it does not provide the name of an employer, a title, a badge number, or any other information that would enable the receiving entity to know or understand what to do in response to the notice. That detail is required, and particularly so here where even Atlas admits in its Service Terms it does not know whether the users of its platform are qualified as covered persons under Daniel's Law. *See* Stio Decl., Ex. A (ATLAS-ALL_00000004)

24

("Atlas' approval of your account should not be relied on as confirmation that you have met the eligibility criteria for protection under the Act.").

In short, the Andreyev email does not contain sufficient information for a Defendant to assess whether the author is entitled to assert the rights being asserted or whether any disclosure of information was prohibited.[18]

### 3. Plaintiffs Fail to Allege Receipt of The Takedown Notices.

Under Daniel's Law, any written takedown notice must be "received" to give rise to a potential claim, as Daniel's Law provides that only "[u]pon [written] notification" and "not later than 10 business days following *receipt* thereof" would the recipient be obligated not to disclose, re-disclose, or otherwise make available the Protected Information. *N.J.S.A.* §56:8-166.1(a)(1) (emphasis added). Both this Court and Plaintiffs have previously acknowledged that "receipt" of a written takedown notice is a necessary element of a potential Daniel's Law violation. *See We Inform, LLC,* 2024 U.S. Dist. 216377, at *22 ("The entity must comply with the request no later than 10 business days *after receipt.*") (emphasis added); *see* Compl.

---

[18] For the same reasons, the email fails to provide notice that the information subject to the request is actually "protected." The email merely states that the listed "home address" is "protected information," with no detail indicating that the information actually relates to a covered person, that the person actually resides at the address, or that any phone number is "unpublished." Compl.¶45. Again, an email stripped of all factual detail does not provide "notice" under Daniel's Law, and the alleged notification is therefore facially invalid. *See Carteret*, 49 N.J. at 124-25.

¶¶ 40, 41 (acknowledging that takedown notices must be "received"); *see also* AG Br. at 47 (acknowledging Daniel's Law applies only "after a valid notice has been submitted and received").

The Complaints should be dismissed because there are no plausible allegations that any such takedown notice was received by Defendants. At most, the Complaints allege only that "the Individual Plaintiffs and all of the Covered Persons . . . *sent* Defendants written nondisclosure requests." Compl. ¶ 45 (emphasis added); *see id.* ¶ 29. That is not enough, especially considering that Atlas's own Service Terms acknowledge that Atlas does not know whether the email addresses to which it unilaterally directed tens of thousands of takedown notices *en masse* for dozens of Defendants are even correct. Stio Decl., Ex. A (ATLAS-ALL_00000005) ("Atlas cannot guarantee, and does not represent, . . . that the email addresses selected by Atlas are correct.").

That failing is especially acute given that courts have routinely held that emails are not entitled to a "presumption of receipt," in contrast to certified mail. *Eddington v. United States Dep't of Def.*, 35 F.4th 833, 840 (D.C. Cir. 2022) ("Without evidence of the consistent functionality of the email application, there is no factual basis from which to derive a presumption of receipt."); *see also Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000) (holding presumption of receipt for electronic communications applies only where the mode of communication is

"accepted as generally reliable" and "the particular message is properly dispatched."). Thus, the claims fail.

      4.    **Plaintiffs Fail to Plausibly Allege that any Defendant Possessed Protected Information or Disclosed That Information After Receiving a Takedown Request.**

Under Daniel's Law, the recipient of the written takedown notice must also: (1) actually possess the "home address or unpublished home telephone number of any covered person;" and (2) then fail to "cease the disclosure of the information and remove the protected information from the Internet or where otherwise made available" within the ten-business-day statutory period following receipt of the written notice. *N.J.S.A.* §56:8-166.1(a)(1).

Although the term "cease" is not defined in Daniel's Law, courts are directed to interpret an undefined term in accordance with its ordinary usage, which is typically obtained from a dictionary. *See United States v. Dawson*, 32 F.4th 254, 261 (3d Cir. 2022) ("To assess ordinary usage [of a term], legal and general dictionaries are a good place to start."). The plain meaning of "cease" is "to stop, give over, discontinue, desist." *Cease,* OED.com (Oxford English Dictionary).[19] One cannot, of course, move or take something away from where it does not exist in the first place. Thus, "it is axiomatic that a 'Covered Person's' information must be within

---

[19] https://www.oed.com/dictionary/cease_v?tab=meaning_and_use#9904394 (last accessed Mar. 7, 2025).

the database in order to trigger liability following a recipient's failure to act on a Covered Person's written takedown notice." Stio Decl., Ex. B (*Spycloud* Order) at 9. Accordingly, under Daniel's Law, a recipient of a written takedown notice must both possess the Protected Information before receipt of a notice *and* then fail to cease disclosure within the specified statutory period.

Despite those statutory requirements, none of the Complaints contain any allegations that any one Defendant possessed an "unpublished" phone number or "home address" of a covered person at the time any takedown notices were sent. Plaintiffs instead implausibly assume that Protected Information for approximately 19,000 assignors and the Individual Plaintiffs was uniformly present in the databases of dozens of differently situated Defendants of varying sizes operating in disparate industries. The Complaints set forth no facts supporting that critical assumption.

On the contrary, Atlas's Service Terms, which are incorporated into the Complaint, *see supra* n. 15, acknowledge that takedown notices will be sent to entities that do not have the covered person's Protected Information. *See* Stio Decl. at Ex. A (ATLAS-ALL_00000005) ("[I]t is important to note that some recipients of takedown notices may not possess some or all of the information in your notice prior to receipt of your takedown notice.").

Plaintiffs attempt to mask this pleading deficiency by engaging in improper group pleading. The Complaints ascribe the same alleged conclusory conduct to

28

dozens of different Defendants. Absent a plausible allegation about what information (if any) a particular Defendant allegedly possessed about the Plaintiffs or the thousands of assignors before any takedown notice was sent, or even about what information a particular Defendant subsequently "disclosed" (*see supra* at 25), the Defendants lack notice of the basis of the claims that the individual Plaintiffs and the thousands of unidentified assignors are asserting against them. That type of group pleading is wholly improper under Fed. R. Civ. P. 8(a)(2) because it "waste[s] scarce judicial resources, inexorably broaden[s] the scope of discovery, . . . and undermine[s] the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1293 (11th Cir. 2018); *see also Foulke v. Twp. of Cherry Hill*, No. 23-CV-2543, 2024 U.S. Dist. 133168, at *22 (D.N.J. July 29, 2024) (same). Plaintiffs should not be permitted to use conclusory and imprecise allegations, claim they apply to every Defendant and to every Plaintiff and thousands of assignors, and then use discovery to go on a fishing expedition to find the number of actual claims, if any, that exist.

Plaintiffs are required to make plausible allegations as to each covered person's Protected Information in their Complaints. They have failed to do so, and therefore the Daniel's Law claim fails. *See Leon v. Target Corp.*, No. 3:CV-15-01, 2015 U.S. Dist. LEXIS 34490, at *7 (M.D. Pa. Mar. 19, 2015) (dismissing claim

based on automated, unsolicited cell phone calls where the complaint failed to allege "the timing and/or the approximate number of offending calls").

Additionally, even assuming any specific Defendant possessed a covered person's Protected Information in the first instance, there are no plausible factual allegations that any Defendant "disclosed" that Protected Information after the ten-business-day statutory compliance period. Plaintiffs simply allege in conclusory fashion – across dozens of boilerplate Complaints and as to dozens of differently situated Defendants – that the "protected information of the Individual Plaintiffs and the [unidentified] Covered Persons remains disclosed or otherwise made available." Compl. ¶ 57. That type of formulaic pleading of the elements, divorced from particularized factual allegations as to a Defendant, fails as a matter of law. *See Twombly*, 550 U.S. at 570 ("labels and conclusions, and a formulaic recitation of the elements of the cause of action" are insufficient to state a plausible claim).

Indeed, in *Spycloud, Inc.* – analyzing a complaint virtually identical to the Complaints filed here[20] – the Superior Court of New Jersey recognized the obvious: "A critical review of Plaintiffs' Complaint fails to confirm that there has been disclosure, re-disclosure, or making available information of either the eight named individual plaintiffs or the 19,021 assignors in that case. That the individual

---

[20] *See* Stio Decl., Ex. C.

30

Plaintiffs or assignors sent takedown notices does not establish the occurrence of a 'disclosure.'" Stio Cert., Ex. B (Order at 10) (denying defendant's motion to dismiss without prejudice and ordering discovery related to whether specific jurisdiction exists). The *Spycloud* Court found the Complaint failed to allege that the "Defendant maintains and has disclosed the personal information that the individual Plaintiffs or assignors seek to prohibit from disclosure," including due to an absence of factual allegations that "any of the individual Plaintiffs or assignors viewed their information on Defendant's website before or after the takedown notices were sent." *Id.*[21] The same is true here.

### 5. Plaintiffs Fail to Plead That Any Defendant Acted in a "Negligent" Manner.

This Court also has determined that the statute contains an implied culpability element, requiring the Plaintiffs to establish that the Defendants acted negligently. *We Inform, LLC*, U.S. Dist. LEXIS 216377, *46 ("Daniel's Law is reasonably susceptible to a construction with a negligence standard of liability."). "Negligence"

---

[21] While the *Spycloud* court allowed jurisdictional discovery on issues of personal jurisdiction, thereby denying the defendant's motion without prejudice, no such discovery is permitted to counter arguments under Fed. R. Civ. P. 12(b)(6). *Keisling v. Renn*, No. 1:09-cv-2181, 2010 U.S. Dist. LEXIS 108523, at *10 (M.D. Pa. Oct. 12, 2010) ("Fed. R. Civ. P. 12(b)(6) requires that the complaint must contain sufficient factual allegations to state a claim upon which relief can be granted . . . . Plaintiff has not met this burden, thus, he is not entitled to conduct discovery in this matter. To do so is, quite simply, to impermissibly put the proverbial cart before the horse.").

claims are "fact-intensive," requiring a breach of duty, meaning such claims cannot be made "without cloaking that assertion in any facts." *Brearey v. Ramsahai*, No. 24-CV-01693, 2024 U.S. Dist. LEXIS, at *4 (E.D. Pa. June 5, 2024) ("[A] naked legal assertion" of "negligence" is "exactly the kind of legal conclusion couched as a factual allegation that the Supreme Court warned against in *Iqbal*.").

Here, even if the Complaints adequately alleged that Defendants disclosed Protected Information after receiving takedown notices (and they do not), the Complaints fail to plausibly allege that the conduct was in any way "negligent." Plaintiffs did not attempt to factually establish such a claim.

To the contrary, by Plaintiffs' own admission, more than 19,000 near-identical takedown requests were: (1) sent *en masse*; (2) via unverified emails originating from the same email domain; (3) to unspecified Defendant email addresses; (4) without any information (such as badge number, employer name, job title, etc.) that would allow Defendants to timely and accurately verify the identity of the purported covered person, and (5) without any mechanism or effort to confirm actual receipt. That is precisely the sort of circumstance this Court recognized as being "unreasonable or impossible . . . to meet the statutory 10 day take-down deadline." *We Inform, LLC,* 2024 U.S. Dist. 216377, at *45-46. And, at the very least, Plaintiffs identify no facts to remotely suggest that any Defendant "unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered

persons after the statutory deadline expired." *Id.* at \*47. Indeed, given Plaintiffs' contention that Daniel's Law is a statute designed to protect privacy, well-established law holds it would not be "unreasonable" to disclose home address or telephone number information that is publicly available. *See id.* at \*46-47 (comparing Daniel's Law to publication of private facts tort and stating that the negligence test adopted for a violation of Daniel's Law is "the same test" applied in *Romaine*); *see also Romaine v. Kallinger*, 109 N.J. 282, 297 (1988) ("invasion of privacy by unreasonable publication of private facts occurs when it is shown that the matters revealed were actually private" (cleaned up)); *GD v. Kenny*, 205 N.J. 275, 311 (2011) (no liability for publication of private facts where information was "long in the public domain").

\*\*\*

Because the Complaints do not contain well-pleaded factual allegations plausibly alleging the elements of a Daniel's Law claim, they fail as a matter of law.

### D.   Plaintiffs Fail to Plausibly Plead Proximate Causation and Damages.

Plaintiffs further allege that, "[a]s a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief." Compl. ¶ 56. Plaintiffs' conclusory and undifferentiated claims of causation and damages do not satisfy Fed. R. Civ. P. 8(a)(2) for several reasons.

### 1. Plaintiffs Fail to Plausibly Plead the Required Element of Proximate Cause.

Plaintiffs fail to plausibly plead that the alleged violations of Daniel's Law proximately caused them any form of injury, as they must.

In assessing claimed violations of New Jersey statutes, "there is a well-recognized presumption that the Legislature has not acted to adopt a statute that derogates from the common law." *Aden v. Fortsh*, 169 N.J. 64, 85 (2001). Hence, "the common law is not derogated absent a specific declaration in the statute or a finding of implied intent to do so." *Georgia v. Suruda*, 154 N.J. Super. 439, 450 (Law. Div. 1977) (quoting *Magierowski v. Buckley*, 39 N.J. Super. 534, 554 (App. Div. 1956)). Daniel's Law contains no such explicit derogation of the common law. *See generally N.J.S.A.* §56:8-166.1. Therefore, common law principles apply.

Proximate causation is a well-established common law principle that "limit[s] liability for the consequences of an act." *Fleuhr v. City of Cape May*, 159 N.J. 532, 543 (1999).[22] Hence, common law principles of proximate causation limit any attempted claim under Daniel's Law.

---

[22] The presumed requirement of proximate cause is also widely acknowledged in the federal statutory context. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (courts "presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute").

While the Complaints collectively assert that Plaintiffs and assignors suffered "damages" "as a result" of Defendants' putative non-compliance with Daniel's Law, *see* Compl. ¶ 56, Plaintiffs allege no facts plausibly supporting that conclusory claim. No Plaintiff, for instance, alleges that they or any other covered person has, in fact, faced any increased risk to their "safety" proximately caused by any alleged violation of Daniel's Law by any specific Defendant.

Likewise, as to any claimed violation of "privacy," no Plaintiff has alleged that the "home addresses" or "unpublished" phone number of any covered person has been kept out of the public domain (*e.g.*, has not been voluntarily published), much less that any Defendant disclosed such information to any third party more than ten business days after receiving a takedown request. *See, e.g.*, *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975) ("[I]nterests in privacy fade when the information involved already appears on the public record."). To the contrary, as previously identified to this Court on the prior motion to dismiss on constitutional grounds, at least four of the Individual Plaintiffs' home addresses remain readily accessible in the public domain and via state agencies' websites. *See Atlas Data Privacy Corp., et al. v. Lightbox Parent, L.P.,* No. 1:24-cv-4105, Dkt. No. 27 at 11.

At bottom, there is no alleged factual linkage between the claimed violations by any particular Defendant and any claimed "harm" to any specific "covered

person." Yet such a causal connection is essential to plausibly allege proximate cause. *See, e.g., Est. of Kamal v. Twp. of Irvington,* No. CV158008, 2018 U.S. Dist. LEXIS 192855, at *6 (D.N.J. Nov. 9, 2018), *aff'd sub nom. Est. of Kamal by & through Kamal v. Twp. of Irvington*, 790 F. App'x 395 (3d Cir. 2019) ("Plaintiff *asserts* that the conduct he describes 'was the proximate cause' of the injuries complained of, but these mere conclusory statements cannot nudge Plaintiff's claims across the line from conceivable to plausible.").

## 2. Plaintiffs Fail to Plausibly Plead Any of Their Claimed Forms of Damages.

If proximate cause is found to exist, Daniel's Law permits the potential recovery of multiple types of damages: "(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act; [and] (2) punitive damages upon proof of willful or reckless disregard of the law." *N.J.S.A.* §56:8-166.1(c). Plaintiffs, however, fail to plead facts sufficient to support their claimed entitlement to any form of damages.

### (a) Plaintiffs Fail to Plausibly Plead "actual damages" for any Covered Person.

With respect to "actual damages," the Complaint does not contain a single allegation identifying any actual damage sustained by any covered person. Plaintiffs' vague, boilerplate references to "privacy" and "safety" are insufficient as a matter of law. *See, e.g., Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674,

2023 U.S. Dist. LEXIS 182921, *13 (E.D. Pa. Oct. 10, 2023) ("Plaintiffs allege that they have 'suffered damages,' including 'embarrassment, humiliation, emotional harm, and distress,' but the Court cannot consider these boilerplate allegations in the absence of facts to support them. Plaintiffs fail to describe how they sustained these alleged 'damages' or otherwise substantiate their existence."); *Lapensohn v. Hudson City Sav. Bank*, No. CV 19-4576-KSM, 2021 U.S. Dist. 77160, *42-43 (E.D. Pa. Apr. 21, 2021) ("The Court cannot consider these conclusory legal assertions in deciding whether the amended complaint states a plausible claim for negligence.").

> (b)  **Plaintiffs Fail to Plausibly Plead an Entitlement to "liquidated damages."**

To the extent Plaintiffs attempt to pivot to "liquidated damages" to save their damages claims, that effort also fails.

The term "liquidated damages" originates from New Jersey contract law and reflects the concept that a specific damage amount for a breach may be set in advance if that amount is "a reasonable forecast of the provable injury resulting from breach." *Wasserman's Inc. v. Twp. of Middletown*, 137 N.J. 238, 249 (1994); *Holtham v. Lucas*, 460 N.J. Super. 308, 317 (App. Div. 2019) ("[L]iquidated damages are an 'estimate in advance [of] the actual damage that will probably ensue from the breach.'"). Courts, however, must invalidate such damages provisions under New Jersey law when enforcement would amount to a "penalty" in view of the damages actually sustained. *Id.*; *MetLife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159

N.J. 484, 493 (1999) ("[T]he need for close scrutiny arises from the possibility that [liquidated] damages clauses may constitute an oppressive penalty."). Thus, under New Jersey law, liquidated damages must be tied to a quantum of proven injury, even if that injury is difficult to quantify. *Utica Mut. Ins. Co. v. DiDonato*, 187 N.J. Super. 30, 43 (App. Div. 1982) (requiring requesting party to establish liquidated damages were "reasonable" "considering the magnitude of the harm caused").

Moreover, when the legislature chooses to use the "technical term" of "liquidated damages" in connection with a statutory remedy, that "suggests that [the legislature] intended to incorporate the locution's well-understood meaning" into the statute, including the "common law of contracts" from which such liquidated damages originate. *Pichler v. Unite*, 542 F.3d 380, 393 (3d Cir. 2008).

Here, Plaintiffs seek $1,000 for each covered person from each Defendant for each "violation" of Daniel's Law under *N.J.S.A.* §56:8-166.1(c)(1). As noted above, however, no Plaintiff has alleged that any covered person suffered any actual damage due to any violation of Daniel's Law. Absent *any* such allegations, it is inconceivable that liquidated damages bear the requisite "reasonable" relation to actual damages to avoid being an invalid penalty under New Jersey law. For that reason, the claims for liquidated damages should be dismissed.

(c)    **Plaintiffs Fail to Plausibly Plead any Factual Support for Punitive Damages.**

While Plaintiffs also demand "punitive damages" against all Defendants under *N.J.S.A.* §56:8-166.1(c)(2) for alleged "willful" non-compliance with Daniel's Law, Plaintiffs state no facts to plausibly support that bold claim.

Plaintiffs allege that at the end of 2023 and early 2024 they began sending takedown requests to Defendants *en masse*, which Defendants then allegedly had to process within ten business days of an unidentified date over the winter holiday season. *N.J.S.A.* §56:8-166.1(a)(1). Plaintiffs also allege that, as of early February 2024 (when these cases were filed), Defendants had not complied with those takedown requests. Compl. ¶ 48. Plaintiffs, however, provide no accompanying detail for their blanket claim of noncompliance in February 2024.

Regardless, *at most*, those conclusory allegations – which were lodged in an identical fashion against many dozens of Defendants – reflect nothing more than a failure to process the takedown requests within ten business days. The Complaint pleads *no* fact to support the assertion that any specific Defendant acted in "willful or reckless disregard of the law." Accordingly, any claim for punitive damages should also be dismissed. *See, e.g.*, *Boring v. Google Inc.,* 362 F. App'x 273, 283 (3d Cir. 2010) (affirming dismissal of punitive damages claim because "there is simply no foundation in the complaint for a demand for punitive damages.").

E.    **The Court Should Strike Plaintiffs' Request for Injunctive Relief**

The Individual Plaintiffs and Atlas vaguely seek "injunctive" relief in all their Complaints. That claim for prospective, injunctive relief should also be dismissed.

## 1. All Plaintiffs Fail to Plausibly Allege a Likelihood of Future Harm Sufficient to Obtain Standing to Seek Injunctive Relief.

To seek injunctive relief, a plaintiff must allege a "plausible future injury which could suffice as a basis for injunctive relief." *In re Gerber Probiotic Sales Practices Litig.*, CIV.A. 12-835 JLL, 2013 U.S. Dist. LEXIS 121192, at *23 (D.N.J. Aug. 23, 2013) (dismissing claim for injunctive relief). Here, the Complaints contain no plausible allegations that Defendants "inten[d] to engage in the challenged conduct in the future." *Id.* Even if the Complaints sufficiently alleged that Defendants were, or are, in violation of Daniel's Law, which *is not* the case, those allegations – without more – do not meet Plaintiffs' burden to establish that Defendants intend to violate Daniel's Law in the future. For that reason, Plaintiffs' demand for prospective injunctive relief should be stricken. *See id.*

## 2. Plaintiffs' Demand For Injunctive Relief is Overbroad and Should be Stricken.

Plaintiffs' requests for injunctive relief also do not withstand scrutiny because they are nothing more than "obey-the-law" injunctions, which courts have routinely declined to grant. *See, e.g.*, *Falcone*, 92 F.4th at 204 ("[A]ll his injunctive requests are impermissibly overbroad 'obey-the-law' orders, which are unenforceable for lack of specificity."); *Sixth Angel Shepherd Rescue, Inc. v. West*, 477 F. App'x 903,

909 (3d Cir. 2012) (affirming dismissal of injunctive relieve because "[a]t best, the Third Amended Complaint seeks the sort of 'obey the law' injunctions courts routinely decline to grant").

The Court need look no further than the WHEREFORE clause in each Complaint to see that Plaintiffs' requests for injunctive relief are improper. Those clauses seek the following: (1) "[o]rdering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individual Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available"; (2) "[o]rdering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed"; and (3) "[e]ntering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law [sic], including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." *See* WHEREFORE Clause, ¶¶ A, E, F. Because Plaintiffs seek an order that Defendants "comply with Daniel's Law," the requested relief is improper and should be stricken from the Complaints. *See, e.g.*, *Powell Duffryn Terminals, Inc.*, 913 F.2d at 83.

## IV.   CONCLUSION

For the foregoing reasons, the Complaints should be dismissed with prejudice, and the Court should also award Defendants such other and further relief as may be appropriate, including their costs.

Dated: March 18, 2025

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

-and-

Tambry L. Bradford (admitted *pro hac vice*)
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
(213)928-9800
Tambry.Bradford@troutman.com

*Attorneys for Defendant RocketReach LLC*
*(1:24-cv-04664)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

-and-

Timothy J. St. George (admitted *pro hac vice*)
Troutman Pepper Locke Building
1001 Haxall Point
15th Floor
Richmond, VA 23219
(804) 697-1200
Timothy.St.George@troutman.com

*Attorneys for Defendants Deluxe Corp.*
*(1:24-cv-04080)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

43

*Attorneys for Defendant Property Radar Inc.*
*(1:24-cv-05600)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant DM Group Inc.*
*(1:24-cv-04075)*

**BALLARD SPAHR LLP**

*s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry
1735 Market Street, Fl. 51
Philadelphia, PA  19103-7599
(215) 864-8500
prattm@ballardspahr.com
berrym@ballardspahr.com

*Attorneys for Defendant*
*Thomson Reuters Corporation (1:24-cv-*
*04269)*

**SEYFARTH SHAW LLP**

*s/ Robert T. Szyba*
Robert T. Szyba
Max A. Scharf
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com
mschart@seyfarth.com

*Attorneys for Defendants*
*We Inform, LLC (1:24-cv-04037), Infomatics,*
*LLC (1:24-cv-04041), and The People*
*Searchers, LLC (1:24-cv-04045)*
**GORDON REES SCULLY**
**MANSUKHANI LLP**

*s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants*
*Quantarium Alliance, LLC and Quantarium*
*Group, LLC (1:24-cv-04098)*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Anthony J. Staltari*
Anthony J. Staltari
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
anthonystaltari@quinnemanuel.com

-and-

Viola Trebicka (admitted *pro hac vice*)
John Wall Baumann (admitted *pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
jackbaumann@quinnemanuel.com

-and-

Ella Hallwass (admitted *pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
ellahallwass@quinnemanuel.com

-and-

Xi ("Tracy") Gao (admitted *pro hac vice* )
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
tracygao@quinnemanuel.com

*Attorneys for Defendant*
*Yardi Systems, Inc. (1:24-cv-04103)*

**LOMURRO, MUNSON, LLC**

*s/ Eric H. Lubin*
Eric H. Lubin
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ  07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants*
*Digital Safety Products, LLC (1:24-cv-*
*04141), Civil Data Research (3:24-cv-*
*04143), and Scalable Commerce & National*
*Data Analytics (2:24-cv-04160)*

**STOEL RIVES LLP**

*s/ Misha Isaak*
Misha Isaak
James Kilcup
Alexandria Giza
760 SW Ninth Ave., Suite 3000
Portland, OR  97205
(503) 294-9460
misha.isaak@stoel.com
james.kilcup@stoel.com
alexandra.giza@stoel.com

-and –

**COOPER, LLC–COUNSELORS AT**
**LAW**
Ryan J. Cooper
108 N. Union Ave., Suite 4
Cranford, NJ  07016
ryan@cooperllc.com

*Attorneys for Defendant*
*Labels & Lists, Inc. (1:24-cv-04174)*

47

**PIERSON FERDINAND LLP**

*s/ Jill A. Guldin*
Jill A. Guldin
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(856) 896-409
jill.guldin@pierferd.com

-and –

**FISHERBROYLES LLP**

Jason A. Spak (admitted *pro hac vice*)
6360 Broad Street #5262
Pittsburgh, PA  15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant*
*Innovis (1:24-cv-24-04176)*

**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**

*s/ John E. MacDonald*
John E. MacDonald
3120 Princeton Pike, Suite 301
Lawrenceville, NJ  08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants*
*Accurate Append, Inc. (1:24-cv-04178), and*
*Restoration of America, Inc. (1:24-cv-04324)*

**BUCHANAN INGERSOLL & ROONEY PC**

*s/ Krista A. Rose*
Krista A. Rose
Samantha L. Southall (admitted *pro hac vice*)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
krista.rose@bipc.com
samantha.southall@bipc.com

*Attorneys for Defendants Zillow Inc. and*
*Zillow Group, Inc.*
*(1:24-cv-04256)*

**GIBBONS P.C.**

*s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant*
*Equimine, Inc. (1:24-cv-04261)*

**RIKER DANZIG LLP**

*s/ Michael P. O'Mullan*
Michael P. O'Mullan
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant*
*Melissa Data Corporation (1:24-cv-04292)*

**STINSON LLP**

s/ *Richard J.L. Lomuscio*
Richard J.L. Lomuscio (ID: 038461999)
100 Wall Street, Suite 201
New York, New York 10005
(646) 883-7471
richard.lomuscio@stinson.com

Matthew D. Moderson (admitted *pro hac vice*)
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
(816) 691-2736
matt.moderson@stinson.com

*Attorneys for Defendant*
*i360, LLC (1:24-cv-04345)*

**GREENBERG TRAURIG, LLP**

*s/ David E. Sellinger*
David E. Sellinger
Aaron Van Nostrand
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
Aaron.VanNosrand@gtlaw.com

*Attorneys for Defendants GoHunt, LLC,*
*GoHunt Management Holdings, LLC and*
*GoHunt Management Holdings II, LLC*
*(1:24-cv-04380)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-
**LOWENSTEIN SANDLER LLP**

*s/ Jennifer Fiorica Delgado*
Jennifer Fiorica Delgado
One Lowenstein Drive
Roseland, NJ  07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant Accuzip, Inc.*
*(1:24-cv-04383)*

**LEWIS BRISBOIS BISGAARD &
SMITH, LLP**

*s/ Thomas C. Regan*
Thomas C. Regan
Matthew S. AhKao
One Riverfront Plaza, Suite 800
Newark, NJ  07102
(973) 577-6260
Thomas.Regan@lewisbrisbois.com
Matthew.AhKao@lewisbrisbois.com


*Attorneys for Defendant
Synaptix Technology, LLC (1:24-cv-04385)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant
Joy Rockwell Enterprises, Inc. d/b/a
PostcardMania PCM LLC ( 1:24-cv-04389)*

**RKW, LLC**

*s/ H. Mark Stichel*
H. Mark Stichel
10075 Red Run Blvd., 4th Floor
Owings Mills, MD  21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant*
*E-Merges.com, Inc. (1:24-cv-04434)*

**GORDON REES SCULLY**
**MANSUKHANI LLP**

*s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant Nuwber, Inc.*
*(1:24-cv-04609)*

**BLANK ROME LLP**

*s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant Belles Camp*
*Communications, Inc. (1:24-cv-04949)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant*
*The Alesco Group, L.L.C. (1:24-cv-05656)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant*
*Searchbug, Inc. (1:24-cv-05658)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant*
*Amerilist, Inc. (1:24-cv-05775)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant*
*US Data Corporation (1:24-cv-07324)*

**MANATT, PHELPS & PHILLIPS, LLP**

*s/ Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, NY  10036
(212) 790-4500
kfriedman@manatt.com

-and -

Kareem A. Salem (admitted *pro hac vice*)
Brandon Reilly (admitted *pro hac vice*)
662 Encinitas Blvd., Suite 216
Encinitas, CA  92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

*Attorneys for Defendant*
*Smarty, LLC (1:24-cv-08075)*

**WOOD, SMITH, HENNING &
BERMAN LLP**

*s/ Jared K. Levy*
Jared K. Levy
Jacqueline Murphy
Christopher J. Seusing
Sean V. Patel
400 Connell Drive, Suite 1100
Berkeley Heights, NJ  07922
(973) 265-9901
jlevy@wshblaw.com
jmurphy@wshblaw.com
cseusing@wshblaw.com
spatel@wshblaw.com

*Attorneys for Defendants
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc., College
Bound Selection Services, Deepsync Labs,
Homedata, and Student Research Group
(1:24-cv-08451)*

**GREENSPOON MARDER**

*s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and

**RAJ FERBER PLLC**

Kiran Raj (admitted *pro hac vice*)
Ryan Scott Ferber (admitted *pro hac vice*)
1629 K Street NW, Suite 300
Washington, DC  20006
(202) 827-9785
kiran@rajferber.com
scott@raiferber.com

*Attorneys for Defendant*
*Darkowl, LLC (1:24-cv-10600)*

**WADE CLARK MULCAHY LLP**

/s/  Robert J. Cosgrove
Robert J. Cosgrove, Esq.
955 South Springfield Avenue, Suite 100
Springfield, NJ 07081
(267) 665-0743
WCM No.: 827.16116
RCosgrove@wcmlaw.com

*Attorneys for Defendant Delvepoint, LLC*
*(1:24-cv-04096)*

58

**KAUFMAN DOLOWICH LLP**

/s/ Christopher Nucifora
Christopher Nucifora, Esq.
Timothy M. Ortolani, Esq.
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
(201) 708-8207
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

*Attorneys for Defendant Spy Dialer, Inc.*
*(1:24-cv-11023)*

**KNUCKLES & MANFRO, LLP**

/s/ John E. Brigandi
John E. Brigandi
600 E. Crescent Avenue
Suite 201
Upper Saddle River, NJ 07677
(201) 391-0370
jeb@km-llp.com

*Attorneys for Defendant PeopleWhiz, Inc.*
*(1:25-cv-00237)*

**STARR, GERN, DAVISON & RUBIN, P.C.**

/s/ Ronald L. Davison
Ronald L. Davison, Esq. (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
973.403.9200
rdavison@starrgern.com

-and-

**ZWILLGEN PLLC**

Jacob Sommer, Esq. (*pro hac vice* pending)
1900 M. Street NW, Suite 250
Washington, DC 20036
202.706.5205
jake@zwillgen.com

Sudhir V. Rao, Esq. (*pro hac vice* pending)
183 Madison Avenue, Suite 1504
New York, NY 10016
Tel: 646.362.5590
Sudhir.Rao@zwillgen.com

*Attorneys for Defendant Lighthouse List
Company, LLC
(1:24-cv-11443)*